## M'Lughan *against* Bovard.

A plaintiff whose interest is transferred after suit brought, is not made a competent witness by the payment, merely, of the costs which have accrued ; his liability for the accruing costs must also be extinguished.

An agreement to a case stated may be rescinded either by tacit or express consent : the abandonment of it is satisfactorily evinced by the parties subsequently pleading to issue ; and when thus abandoned, it is not evidence which may be given to the jury upon the trial of the cause.

A case stated having been read to a jury as evidence of the facts contained in it, it is competent to prove by the attorney, who signed it on behalf of his client, that his signature was obtained by artifice, or that the assent of his client was not had.

A note or bill taken in satisfaction of a precedent debt imposes no further duty on the creditor than to use reasonable diligence in obtaining payment or acceptance by presenting it in season, and giving notice of its dishonour to the debtor from whom it was had, if he be a party to it.    But if he be not a party to it, want of notice is immaterial, unless he has sustained actual loss from it.

A plaintiff may suffer a nonsuit at any time before the jury have signified to the court their readiness to give in their verdict.

If both associate judges be interested in the event of a cause, *quære*, whether, in order to prevent a failure of justice, a president judge might not alone hold a special court ?

ERROR to the special court of common pleas of *Butler* county, held by Shaler, president.

This was a *scire facias* to April term 1824, upon a judgment of April term 1818, at the suit of John M'Lughan & Co. against James Bovard,

[M'Lughan v. Bovard.]

John Parker, Hugh Murrin, George Knox & Co. alias The President and Directors of the Lawrenceburg Association.  The plaintiffs were John M'Lughan and William Hill ; the latter of whom had failed, and assigned all his interest in the suit.  The plaintiff offered in evidence the deposition of William Hill, having, previously to taking it, paid all the costs which had accrued ; the deposition was objected to on the ground that he remained liable for costs accruing, which should also have been paid to render the witness competent. The objection was sustained, and the evidence rejected.  Upon the original judgment this entry was made : " this judgment assigned to James S. Craft, as per writing filed, dated the 12th of February 1823."  After issue was joined upon the plea of payment to the *scire facias*, these proceedings were had.  The 6th of April 1825, rule on the plaintiff to show cause on the first of next term why satisfaction of the original judgment should not be entered, in case the paper containing the case stated is not produced.  On motion, the court ordered this rule to be served on James S. Craft, Esq., and that the term be extended to January term 1826.  The 10th of January 1828, case stated ordered to be filed, and rule to show cause why the case stated should not be withdrawn ; this rule enlarged until the plaintiff produces the depositions of Ithamar Whiting, taken according to the rules of the court.  The 17th of July 1832, it was ordered that the case stated be opened, so far as that the same shall not be considered conclusive evidence of the facts contained in it, and so far as it authorizes the court to enter satisfaction, and that it remain on record and be given in evidence on the trial of the *scire facias*, as *prima facie* evidence of the facts contained in it, subject to be contradicted by proof.

Upon the trial the defendants offered in evidence the stated case referred to, to which the plaintiff objected, and the objection was overruled and the paper read.

" The following facts are agreed upon by the parties in the above suit, on which they pray the opinion of the court.

" The real plaintiff in the case is William Hill of Pittsburgh.   In the commencement of January 1820, the defendant's procured a draft from Charles Campbell on Ithamar Whiting of Pittsburgh, in favour of James Bovard, which the said Bovard indorsed to William Hill, the plaintiff, for the amount then due on the above judgment, payable at sight.   William Hill received the said draft, presented it, and it was accepted by Whiting, but not paid ; on which it was returned to defendants with a request from the plaintiff's attorney, William Ayres, Esq., that they would attend to arranging the business with Mr Hill themselves.   John Parker, one of the defendants, took the draft again to Pittsburgh ; gave the draft to Mr Hill, and called upon Mr Whiting, who promised to settle it to Mr Hill's satisfaction.   Mr Hill afterwards agreed with Mr Whiting to give up the draft to Whiting for his (Whiting's) own note at sixty days, for the money ; and the note was given and the draft given up accordingly, but none

[M'Lughan v. Bovard.]

of the defendants were cognizant of this arrangement, nor consulted concerning the same. Hill had the note discounted by John Towne, who still holds the same unpaid. A receipt was entered on the docket by the defendant's attorney (*prout* copy annexed) for the amount of the note, but after the time of payment of said note was elapsed, the plaintiff gave notice to the defendants that it was unpaid, and called on them for the amount of the judgment, which they refused to pay, considering that the aforesaid draft, &c. was a payment as respected them.

"The defendants pray that satisfaction may be ordered to be entered on the aforesaid judgment, which the plaintiff resists; and the opinion of the court is requested in the premises, on the facts aforesaid.

"William Ayres, Attorney for plaintiff.
"John H. Hopkins, Attorney for defendants."

The plaintiff then offered William Ayres, Esq. as a witness, to prove that at the time he assented to the case stated, he had not been informed by his client of the facts, and this offer was made for the purpose of destroying the validity of the same. The defendants objected to the evidence, and it was rejected. On the subject of the legal effect of the facts contained in the case stated, if true; whether the transaction referred to, receiving the draft and taking the note of Whiting, was an extinguishment of the judgment, a new security or conditional payment, the court thus instructed the jury:

"The next matter that occurs, supposing that this business was transacted with the assent of Judge Parker, is the understanding of the parties as to whether this should be an extinguishment of the debt, or a new security, or conditional payment?

"If Hill took the note of Whiting in discharge of his claim, he cannot, when it is returned upon his hands, look to the defendants for ultimate payment. If he received it as satisfaction on condition of its being paid, it cannot operate as a discharge of the judgment until paid, unless from some laches on the part of the plaintiff. How is this part of the case? It appears that a draft on Whiting was originally given to Hill; that it was unpaid; that it was returned to defendants; that Judge Parker went down purposely to arrange it; that he left it with Hill, who ultimately took Whiting's note for it. Now it appears not a little singular, if Hill intended to resort to the defendants for the money in case of non payment, if he did not intend to discharge them from their responsibility, that he should take Ithamar Whiting's note to himself without guarantee or indorsement, by which he might have insured its payment from Judge Parker; and perhaps it is still more unaccountable that he should take this note as an extinguishment of the judgments against the defendants, who were so perfectly able to discharge it. You see the difficulty and must weigh the different presumptions for yourselves, after examining the case stated, the note and receipt: if you think the note given in extinguishment of the debt, the case is with the

[M'Lughan v. Bovard.]

defendants; if not, it is with the plaintiffs, unless other circumstances may decide it against them.

"The point to which I shall call your attention is the question of laches by the plaintiffs, in reference to this note. What were the obligations of Hill when he took the note? It clearly was not merely to give notice of its dishonour, which, if it had been an ordinary business transaction, he has not done in time, but to place the defendants in the same condition in which they were at the time the note was given. They might, either by proving to you the insolvency of Whiting and that it would have been useless to pursue him, or that they gave up the note or offered to give it up to the defendants, or that they had endeavoured to enforce the payment of the note against Whiting. Failing in these matters, or in some of them, I should aver that the plaintiff had been guilty of gross negligence. Fourteen years have now elapsed since the note was given. Whiting is admitted to have left the county; to have changed his domicil; and the plaintiff, who had pocketed the case stated for five years, now produces a note pocketed for fourteen years; proves no offer to return it to defendants, and fails in proving the insolvency of Whiting. If you believe these facts, I should think it very gross negligence on the part of the plaintiff, which would preclude his recovery; but the facts are for you, and the question of negligence is left to your decision. Should you concur with the court in opinion on this point, your verdict should be for the defendants."

When the jury were coming into the box to render their verdict, the plaintiff moved for a nonsuit, which was overruled by the court, and a verdict taken for the defendants.

Both the associate judges were parties in interest in the cause, and the special court was held by Shaler, president.

The several bills of exception to evidence and the charge of the court were assigned for error; and also that the plaintiff should have been permitted to take a nonsuit; and that Judge Shaler alone did not constitute a legal court having jurisdiction to try a cause.

*Biddle*, for plaintiff in error, as to the rejection of the deposition of Hill, cited, Fetterman *v.* Plumer, 9 *Serg. & Rawle* 20; Davis *v.* Barr, *Ibid.* 137; Willing *v.* Peters, 12 *Serg. & Rawle* 181; Jackson *v.* Crawford, 14 *Serg. & Rawle* 291; Jackson *v.* Crawford, 12 *Serg. & Rawle* 168; Gallagher *v.* Milligan, 3 *Penns. Rep.* 178; Brown *v.* Insurance Company, 4 *Yeates* 121. On the subject of notice and return of note, *Chitt. on Bills* 97; 3 *Maul. & Selw.* 364; Ormsby *v.* Fortune, 16 *Serg. & Rawle* 302; 2 *Wils.* 328; 5 *Day* 32; Gurley *v.* The Bank, 7 *Serg. & Rawle* 324. That the plaintiff might take a nonsuit at any time before the jury had announced their readiness to give a verdict, *Purd. Dig.* 450. That a president judge cannot hold a special court alone, *Pam. Laws of 1833, 1834, pages* 19, 20; *Purd. Dig.* 451.

[M'Lughan v. Bovard.]

*Evans* and *Purviance*, for defendant in error, on the first point, cited, 1 *Peters's C. C. Rep.* 261 ; Johnston *v.* Chapman, 3 *Penns. Rep.* 18: on the second point, Isett *v.* Hoge, 2 *Watts* 128 ; 1 *Stark.* 103 ; Yordair *v.* Hess, 13 *Johns.* 492.

The opinion of the Court was delivered by

GIBSON, C. J.—As provision was not made to extinguish the liability of Hill for the accruing costs, his deposition was properly excluded, though the case seems to fall, in other respects, within the principle of Steele *v.* The Phœnix, and Willing *v.* Peters. The terms of the assignment to Mr Craft, who is now the real plaintiff, do not appear ; and if, as has been supposed, the claim was taken by him in payment of a precedent debt, which, according to M'Ginn *v.* Holmes, 2 *Watts* 121, would leave him still liable to the debt if the claim should prove worthless, it lay on the defendants to show it. But their exception was not put on that ground at the trial, and it is not our business to imagine circumstances to support it here.

An important question as regards the event, arises on the paper called a case stated, which was admitted as *prima facie* evidence of the facts contained in it. The case had been set aside on terms which purported to make it such ; but granting, for the argument, the power of the court to impose them, yet if the agreement had ceased to exist for every purpose, its suppression was a nullity which did not authorise the court to burthen the applicant for it with an alternative, or exact an equivalent. An agreement may be rescinded by tacit as well as by express consent ; and it is virtually so where the parties have evinced, by acts inconsistent with its purpose, that they have abandoned it. Now nothing more satisfactorily evinces the abandonment of a case stated which is but an agreement, than subsequently pleading to issue ; because a contest before a jury is utterly inconsistent with an adherence to facts previously established. A case stated is a substitute for a verdict, resorted to for convenience and to save the expense of a trial, its purpose being not to make evidence for a jury, but to supersede the action of a jury altogether, by imparting to facts ascertained by consent, the judicial certainty requisite to enable the court to pass upon the law, and give judgment on the whole ; and its existence is consequently inconsistent with an issue to draw the facts again into contest. Now the case in question was stated, as appears by the caption, not in the *scire facias* suit, but on a rule to show cause why satisfaction should not be entered of the judgment in the original action. The date of it is not conclusively ascertained, but it certainly was not later than the inception of the *scire facias*, which was consequently brought in disaffirmance of the agreement ; on which disaffirmance the defendants joined by pleading generally and putting themselves on the country. By their plea they waived the previous case made ; and thus stood matters when the plaintiff applied to have it withdrawn. The parties were at issue on every fact contained in it ; and the motion was

[M'Lughan v. Bovard.]

to have it formally disposed of, in order, I presume, to give the parties a clear field—a matter altogether unnecessary, as it was no part of the proceeding on the *scire facias*, and had, for every legal purpose, ceased to exist. The unfounded apprehension of the plaintiff that it might be otherwise, did not authorise the court to treat it as an existing document and exact terms for the setting of it aside.

Independent of the effect imparted to it by those terms, it is supposed to have acquired a degree of credit from the bare statement of the case as an admission of the facts. For what purpose and on what condition was that admission? Exclusively to have the judgment of the court on the facts submitted, and not to give them effect for any other purpose. Each may have been willing to put the law upon the circumstances, without intending to admit, or even without believing them to be an accurate representation of the truth; and without consenting to be bound by them in another proceeding. A counsel, confident that the law of the case depends entirely on a particular fact, which, if found, would be decisive for him, might be willing to say to his antagonist, "give me that fact and make the rest of the case as you please:" yet a statement immaterial in point of legal effect, which could well be risked before a court, might expose the party to the most inveterate prejudices of a jury; and if the consequences of admissions thus made were to follow him on subsequent occasions into an inquiry by another tribunal, there would be an end of agreements to settle facts by consent. A rejected offer of compromise shall not prejudice; because it may have been proposed at a sacrifice as the price of peace, or with a view to compensation by concessions on the adverse part, and because the admissions implied by it were to have an effect limited to the particular occasion. In these respects its analogue is a case stated, whose explosion ought not, on any principle of justice, to do the parties a mischief to which they had not consented to expose themselves, especially when the advantages expected from the cheapness and convenience of it had not been realized. But it is conclusive that a case withdrawn is in effect a verdict set aside or reversed for error, which has no further operation. And there is in this respect no difference whether it be general or special, as was held in Mahoney *v.* Ashton, 4 *Har. & M'Hen.* 295; nor can there be a difference in principle between a verdict and a case stated; for the legal effect must be the same, whether the parties undertake to say the truth for themselves or put themselves on a jury to say it for them.

But the supposed admissions of the case being actually in evidence, the testimony of the counsel who signed it became unquestionably competent to show, not only that his signature was gained by artifice, but that the actual assent of his client was not had. A client is doubtless bound by the *legal effect* of his attorney's act, whether specially authorized or not; but there is no adjudged case to show that he is bound by an unauthorized concession of facts which have lost all legal effect by being thrown open to the inspection of a jury.

IV.—2 P

[M'Lughan v. Bovard.]

A mistaken concession of the client himself is open to explanation by proof of ignorance or misconception; and *a fortiori* a mistaken concession of his counsel ought to be so by proof of an exclusive reliance on misrepresentations of the adverse counsel. For defect of authority it was held, in Campbell *v.* Kent, 3 *Penns. Rep.* 72, that the client was not bound even by the legal consequences of his attorney's act. But the principle which governs the competency of allegations in a chancery bill comes still nearer to the point. These operate sometimes as admissions. " If no proceedings have been had on the bill, the allegations which it contains will not operate as evidence against the plaintiff, by way of admission, *unless his privity be proved.* But if the privity of the plaintiff can be established, the bill will be evidence against him, though the facts were suggested for the purpose of discovery *upon the surmise of counsel.*" *Starkie's Ev.,* part 2, *p.* 286. On this principle can it be doubted that the testimony of the counsel was competent to prove want of privity of his client, in a case stated on which there had been no further proceeding? Had judgment been rendered on it, the facts conceded in it might undoubtedly have been introduced to affect him like facts found in a special verdict. But even had it not been withdrawn, the order to set it aside could not have been considered as a proceeding on it, but on the rule to show cause. The rejected part of the testimony ought to have been received.

The exceptions to the charge are founded on facts supposed to have been sustained by the case stated as *prima facie* evidence of them; the law arising out of which, as the same facts may be again before a jury on other evidence, it is necessary to decide. The facts appeared thus. The defendants procured a draft for the amount of the judgment, drawn at sight by Campbell, a stranger, on Whiting, another stranger, and in favour of Bovard, a defendant, who indorsed it to Hill, then the beneficial owner of the judgment; which being accepted but not paid when presented, was returned. It was, however, again delivered to Hill by Parker, another defendant, with a new acceptance; after which it was given up for the acceptor's promissory note at sixty days, payable to Hill. The most important assertion of fact in the case stated is, that the note was taken without the knowledge or consent of any one of the defendants; yet in Hill's receipt to Parker, filed by the defendants as a credit on the original judgment, and made part of the case, it is expressly asserted that the note was delivered to him by Parker. In this particular the truth is, the case is inconsistent with itself. Hill subsequently discounted the note with Towne, who holds it unpaid; and Hill demands the amount of it from the defendants, who insist on it as absolute payment. Nothing is clearer than that if Hill gave up the draft against or without the consent of the defendants, he made the note taken in lieu of it his own, and the jury were so instructed; but if all was done with their acquiescence, then other questions arise in respect to Hill's supposed liability to the consequences of the

[M'Lughan v. Bovard.]

drawer's insolvency.  The judge charged that it was his duty not only to give notice of dishonour, which, viewing the transaction as an ordinary business one, it was said he had not done in time, but to place the defendants in the situation they held when the note was drawn, by offering to give it up to them, or endeavouring to enforce payment of it by the drawer, if he were not desperately insolvent ; and that failing to do so, he would be guilty of negligence.

The correct law of the case is free from doubt or difficulty.  A note or bill taken in satisfaction of a precedent debt, imposes no further duty on the creditor than to use reasonable diligence in obtaining payment or acceptance by presenting it in season, and giving notice of its dishonour to the debtor from whom it was had, if he be a party to it.  Smith *v.* Wilson, *Andr.* 187.  But where, as here, the debtor is not a party to it, even want of notice is immaterial unless he has sustained actual loss from it.  *Chitty on Bills* 98.  It would therefore be clear, on the facts stated, that the plaintiff had done at least all that the law exacted of him.  It was the business of the defendants, having notice, to pursue the drawer themselves ; the most they could claim of the plaintiff being the use of his name as a trustee.  That the note was in the hands of a broker presented no obstacle to a suit by them in his name, and imposed no other duty on him than to produce it when called for.  Even had notice not been given, he would have been responsible but for consequential damage; and in both these aspects the direction was erroneous.

If, however, the plaintiff were liable for laches at all, the measure of his liability would seem, from Harvey *v.* Turner, 4 *Rawle* 223, to be the nominal and not the actual value of the note.  This question can scarcely arise again, as the turning point will probably be the imputed agency or acquiescence of the defendants in the substitution of the note, which can affect them at all only by showing that it was not received as payment, but on account.

To the direction to find for the defendants generally if laches were proved, there was no exception at the trial ; and the error, if there were any, is not to be made the subject of assignment here.  Nor, as the case stood before the jury, was it destitute of evidence to disprove the existence of a balance.  In the case stated, the draft is expressly said to have been for the amount due, and that Hill gave it up for Whiting's note for the money, that is, for the money due on the judgment.  The existence of a balance seems not to have been in contest ; and it is not our business to rejudge the cause on its merits. As it goes to another jury, the parties will have an opportunity to inquire into the fact afresh ; and the same remark is predicable of the supposed error in submitting the question of extinguishment without evidence to raise it.

In like manner the refusal to allow the plaintiff to suffer a nonsuit, has become unimportant in the particular cause, though, as the point was directly made below, and is insisted on here, it is our business to decide it.  " Whenever," says the statute by which the right

[M'Lughan v. Bovard.]

is regulated, "the jury shall be ready to give in their verdict, the plaintiff shall not be called; nor shall he then be permitted to suffer a nonsuit." When are the jury thus ready? They are ready, in one sense, as soon as they are agreed; but it would scarcely be pretended that the right is determinable by a criterion so uncertain, and of such difficult ascertainment as the point of time when they became so. The court is supposed to be uninformed of what is passing in the jury-room, and cannot regulate its action by what happens there; neither can it know that the jury are agreed when they are on their way to the courthouse, or even when they have entered the hall or box, for juries often return for further direction: and to inquire by affidavit into the exact point of time when they arrived at their conclusion, would be replete with confusion. But they may not be ready even when they are agreed; for they must repair to the box, be counted, and signify their readiness. The right of the plaintiff, therefore, ceases only when, in reply to the usual inquiry of the prothonotary, they have officially announced their readiness to the court. But the matter is not governed exclusively by considerations of abstract reason or convenience. The point of time indicated by the words of the statute, "the plaintiff shall not be called," was that at which, by the *practice in force* when it was passed, the plaintiff was demandable; which was the instant before the verdict, and it is to this that the words "nor shall he *then* be permitted to suffer a nonsuit," have relation: consequently his right is unimpaired till then. It is, perhaps, not important when it terminates; but it is highly so that the period of its termination be marked by some definite point of time, susceptible of such certainty as will prevent cavil; for which purpose, none is so practicable in its application as the one which seems to be indicated by the very words of the statute. What the effect of a nonsuit would have been at the trial, is not now to be determined, it being sufficient for the occasion to say the plaintiff was not precluded by the statute.

Whether the court, consisting as it did of the president alone, had competent jurisdiction, or whether the interest of the associate judges, which disqualified them from sitting, made the case an exception to the positive directions of the act of special constitution, which require at least one of the associate judges to be joined with the president, is a difficulty which it is at present unnecessary to resolve, as the parties will doubtless procure a private act to remove it. If forced to dispose of it by construction, we would probably hold the president to be competent in order to prevent a failure of justice. A construction so violent, however, could be justified but by an extremity which may not occur, as the legislature would doubtless interpose; and it is sufficient to refer the parties to that body in the first instance.

Judgment reversed, and a *venire de novo* awarded.