[PHILADELPHIA, JANUARY 21st, 1837.]

## CALDWELL *against* REMINGTON and Another.

### IN ERROR.

1. The plaintiff in the court below declared in *indebitatus assumpsit*, with the common money counts; and the court afterwards granted leave to file four new counts; the first upon an alleged guaranty by the defendant, of a check drawn by a third person in his favour, and cashed by the plaintiff, and the second, third and fourth, upon the defendant's endorsement of the check : *Held*, that the amendment being previous to the trial, was within the discretion of the court below, and not the subject of a writ of error ; and that, if it were, the additional counts were properly admitted.
2. Of the evidence necessary to identify a paper, so as to authorise it to be submitted to a jury.

On a writ of error to the District Court for the City and County of Philadelphia, the case was as follows:—

Charles Remington and James Remington, trading under the firm of C. & J. Remington, brought an action on the case against Andrew D. Caldwell, to March Term, 1834, of that court. On the 10th of July, 1834, they filed a declaration in *indebitatus assumpsit*, containing the common money counts, and on an account stated ; to which the defendant pleaded *non assumpsit*, and payment ; with leave, &c. On the 17th of January, 1835, the plaintiffs, by leave of the court, filed four new counts, as follows:—

" And the said plaintiffs, by Charles Wheeler, their attorney, further complain and say, that at the county aforesaid, viz. on the first day of May, in the year 1829, the said defendant, in consideration that the said plaintiffs would cash the check of one Warnet Myers, on the Bank of the Northern Liberties, payable to the said defendant, by the name or description of Andrew Caldwell, or order, for $150, dated Philadelphia, May 9th, 1829, he, the said defendant, would guaranty the payment of the said check to the plaintiffs. And the said plaintiffs aver, that in pursuance of said contract, they cashed the said check, by paying the said defendant, viz. the said sum of $150. And the said plaintiffs aver, that they duly presented the check, having the order of the said defendant in their favour endorsed thereon, at the said bank, viz. on the said 9th day of May aforesaid, and demanded payment thereof, but received none. And

they further aver, that they often afterwards demanded payment thereof at the bank aforesaid, without receiving any.

And the plaintiffs further complain and say, that, viz. on the 9th day of May, 1829, one Warnet Myers, viz. at the county aforesaid, drew his check on the Bank of the Northern Liberties, in favour of the defendant, by the name or description of Andrew Caldwell, or order, for $150. And the said defendant, then and there, for the sum of $150, then and there paid to him by the plaintiffs, endorsed the said check to the plaintiffs. And the plaintiffs aver, that on the day and year last aforesaid, they presented the said check at the said bank, and demanded payment thereof, but received none. And the said plaintiffs aver, that they immediately gave notice of the non-payment thereof to the said defendant; by reason whereof the said defendant then and there became liable to pay the said plaintiffs the said sum of $150, and being so liable, he, the said defendant, in consideration thereof, assumed and promised the said plaintiffs, to pay them the said sum of money, when he, the said defendant should be thereunto requested.

And the said plaintiffs further complain and say, that, viz. on the 9th day of May, 1829, one Warnet Myers, viz. at the county aforesaid, drew his check on the Bank of the Northern Liberties, in favour of the defendant, by the name or description of Andrew Caldwell, or order, for $150; and the said defendant, for the sum of, viz. $150, then and there paid to him by the plaintiffs, endorsed the said check to the said plaintiffs; and the plaintiffs aver, that on the day and year last aforesaid, they presented the said check at the said bank, and demanded payment, but received none. And the said plaintiffs aver, that they gave due notice of the non-payment thereof to the said defendant, by reason whereof the said defendant then and there became liable to pay the said plaintiffs the said sum of $150; and, being so liable, he, the said defendant, in consideration thereof, assumed and promised the said plaintiffs, to pay them the said sum of money, when he should be thereunto requested.

And the said plaintiffs further complain and say, that, viz. on the 1st day of May, 1829, one Warnet Myers, viz. at the county aforesaid, drew his check in favour of the defendant, by the name or description of Andrew Caldwell, or order, for $150, upon the Bank of the Northern Liberties. And the said defendant, for the sum, viz. of $150, then and there paid to him by the plaintiffs, endorsed the said check to the said plaintiffs; and in consideration of the said prompt and immediate payment of the said money, the said defendant agreed to waive notice of the refusal by the bank to pay the check, at maturity, if the bank should refuse to pay it, and would be himself responsible for the payment thereof. And the said plaintiffs aver, that at the maturity of the said check, to wit, on the 9th day of May last aforesaid, they presented the said check at the said bank, and demanded payment, but received none, by reason

(Caldwell *v.* Remington.)

whereof, the said defendant then and there became liable to pay the said plaintiffs the said sum of $150, and being so liable, he, the said defendant, in consideration thereof, afterwards, to wit, on the same day and year last aforesaid, viz. at the county aforesaid, assumed and promised the said plaintiffs to pay them the said sum of money, when he should be thereunto requested.

CHARLES WHEELER."

On the 24th of January, 1835, the defendant obtained a rule to show cause why the above counts should not be struck off; which rule, on the 31st of January, 1835, was discharged.

The cause came on for trial on these pleadings before JONES, J. on the 18th of May, 1836, when the plaintiff's counsel produced as a witness one Richard Richmond, who, being duly sworn, said, " I was present when Caldwell presented this check" (being the same check then exhibited to him by plaintiff's counsel, and afterwards given in evidence as hereinafter stated) " to Remington to change. Remington refused changing the check, because he did not think Warnet Myers was good for the money. Caldwell told Remington that he (Caldwell) would be responsible for the check, and if he would change it, he might take out the amount of a bill. Remington then counted him down $75, and gave him a check for the balance, deducting the bill. I presented the check at the bank twice. Payment was refused at the bank. I recollect Caldwell's stopping one day at Remington's and telling him if he would present the check on a certain day, he (Caldwell) thought it would be paid. I do not know whether the check was presented on the day then named by Caldwell, or not. Some time afterwards I heard Remington say to Caldwell, 'You ought to pay this check.' Caldwell replied, " No, you took the check on your own responsibility, and I think you ought to lose it.'. I think the check was dated ahead." Being cross-examined, he said : " The check which I have stated Caldwell passed to Remington was dated the 9th of May, 1830. It was for $150. I never saw Warnet Myers write, I do not know his handwriting. I never saw Andrew D. Caldwell write, I do not know his handwriting. I put no mark on the check at the time, by which I can say this is the same check which Caldwell passed to Remington. I never presented any check of W. Myers's at bank, except one for $150. I do not know that this check now shown to me (the same exhibited to witness by plaintiff's counsel) is the same which I saw Caldwell pass to Remington, except that I never presented but one check of W. Myers's to bank, except one for $150. I do not know that this one is the same. I did not see the check when Caldwell passed it to Remington. I was a yard off." Whereupon the plaintiff's counsel offered to give in evidence the check which he had exhibited to the witness, purporting to be drawn

(Caldwell *v.* Remington.)

by W. Myers, and endorsed by Andrew D. Caldwell, dated May 9th, 1820, for $150, to which the defendant's counsel objected; but the learned judge overruled the objection, and admitted said check to be given in evidence, and referred it to the jury to decide upon the evidence aforesaid, whether the check so offered was the check to which the transaction between the parties spoken of by the witness as aforesaid, related; and the same was accordingly given in evidence.

The counsel for the defendants took a bill of exceptions to the opinion of the Court admitting the check in evidence; and a verdict having been rendered for the plaintiffs, removed the record to this court, and assigned the following errors:

" 1. That the court below erred in permitting the plaintiff below on the 17th January, 1835, to file, four new counts on causes of action entirely new, distinct and different from those on which the action was originally brought and the narr. filed.

2. That the judge who tried the cause erred in permitting the paper purporting to be a check, dated May 9th, 1829, to be given in evidence; the same not having been identified, and no evidence having been given of the handwriting of the drawer or endorser thereof.

3. That the judge who tried the cause erred in referring it to the jury to decide whether the said check was the check to which the transaction between the parties spoken of by Richard Richmond related: there being no evidence that it was the same check, for the jury to pass upon."

Mr. *Meredith*, for the plaintiff in error, contended,

1. That the additional counts set forth a new and substantial cause of action, and could not be admitted as an amendment, under the act of 1806; citing *Ebersol* v. *Krag*, (5 *Binn.* 53.)    *Cassell* v. *Cook*, (8 *Serg. & Rawle*, 287.)    *Newlin* v. *Palmer*, (11 *Serg. & Rawle*, 102.)    *Cunningham* v. *Day*, (2 *Serg. & Rawle*, 1.)    *Rodrigue* v. *Carver*, (15 *Serg. & Rawle*, 81.)    *Wilson* v. *Wallace*, (8 *Serg. & Rawle*, 53.)    *Farmers and Mechanic's Bank* v. *Israel*, (6 *Serg. & Rawle*, 294.)    *Nutz* v. *Reutter*, (1 *Watts*, 229.)    *Coxe* v. *Tilghman*, (1 *Wharton's Rep.* 282.)

2. That the check was not admissible; not being sufficiently identified by the testimony of the witness; and the handwriting of the parties not having been proved.    Upon this point he cited *Hays* v. *McClarg*, (4 *Watts*, 452.)    *Carter* v. *Connell*, (1 *Wharton's Rep.* 399.) *Whitehill* v. *Wilson*, (3 *Penn. Rep.* 415.)    *Stouffer* v. *Latshaw*, (2 *Watts*, 167.)    *Sypher* v. *Long*, (4 *Watts*, 253.)

(Caldwell *v.* Remington.)

Mr. *Wheeler* for the defendant in error,

1. This was an amendment at common law, and therefore entirely within the jurisdiction and discretion of the Court below. *Tryon* v. *Miller*, (1 *Wharton's Rep.* 17, 18.) But even if it be the subject of a writ of error, the decision is supported by the authorities. 3 *Morgan's Vade Mecum*, 29 ; *Chitty on Bills*, 467. *Crozier* v. *Armstrong*, (3 *Johns. Cases*, 5.) *Smith* v. *Smith*, (2 *Johns. Rep.* 235.) *Pearce* v. *Crafts*, (12 *Johns.* 90.) *D'Utricht* v. *Melchor*, (1 *Dall.* 428).

2. The evidence set forth on the record, was sufficient to authorise the admission of the paper ; and *non constat* that there was not other evidence to authenticate it.

The opinion of the court was delivered by

Rogers J.—Great liberality has been manifested by the courts of this state in allowing amendments before trial, when it appears that such indulgence may contribute to promote substantial justice. Formerly, suitors were much perplexed by writs of error, brought upon very slight and trivial grounds, as misspelling, or other mistakes, all which might be amended at common law, while all the proceedings were in paper, for they were then considered as only *in fieri*, and therefore subject to the control of the courts. But when once the record was made up, it was formerly held, that by the common law, no amendment could be permitted, unless within the very term in which the judicial act so recorded, was done ; for during the term the record is in the breast of the court, but afterwards it admitted no alteration. *Co. Lit.* 260 ; 2 *Burr.* 1099. But now the courts are become more liberal, and when justice requires it, will allow of amendments at any time while the suit is depending, notwithstanding the record is made up, and the term past; for they at present consider the proceedings as *in fieri*, till judgment is given, and therefore that until then, they have power to permit amendments by the common law ; but when judgment is once given and enrolled, no amendment is permitted in any subsequent term. 3 *Bl. Com.* 406. The amendment which was permitted by the court in this case, was allowable at the common law, and did not fall necessarily under the act of 1806; the effect of which is to allow amendments after swearing the jury, as fully as they could do at common law before that period. Under the act of 1806, it has been repeatedly held, that the amendments prescribed are mandatory, and not discretionary ; and for that reason they have been recognised (where amendments have been allowed or refused,) as subjects of error in many cases. But when the amendment is at common law, it rests in the sound discretion of the court ; who may impose on the party asking the amendments, proper and equitable terms and conditions, according to the particular circumstances. *Burk* v. *Huber*, (2 *Watts*, 306.)

(Caldwell *v.* Remington.)

But aside of this objection, the amendment was properly allowed; the plaintiff had filed the common money counts, and leave was given to file a special count, obviously referring to the same transaction. The case of *Cunningham* v. *Day*, (2 *Serg. & Rawle*, 1,) is in point. In *Cunningham* v. *Day*, the declaration was in *indebitatus assumpsit*, for money had and received. On the trial, it appeared that the plaintiff gave the defendant a mare, and twenty five dollars, in exchange for a horse; the defendant sold the mare for a tract of unseated land and twenty-five dollars. It afterwards turned out that the mare was stolen, and was purchased by the defendant without knowledge thereof, and the plaintiff was obliged to deliver her up to the owner. It having been decided by the court, that on the money count, the plaintiff could only receive $50, without interest, which the defendant had received from the plaintiff, the court permitted the plaintiff to amend his declaration by adding a new count, founded on the special contract of the parties. The amendment was allowed on this principle, that while it was never intended to permit the plaintiff to change the cause of action, yet any amendment short of this, was within the letter and spirit of the act, whether in matter of form or matter of substance, affecting the merits of the case. In actions *ex contractu*, so long as the plaintiff adheres to the original instrument or contract, on which the declaration was founded, an amendment making an alteration in the ground of recovery, on that instrument or contract, or of the mode in which the defendant has violated it, is admissible. *Coxe* v. *Tilghman*, (1 *Whart.* 282.)

There is nothing in the second and third errors: for such proof was made of the identity of the check, as to justify the court in permitting it to be read, and if read, in leaving it to the jury to decide, whether it was the check to which the witness referred. The witness was present, when a check for $150, drawn by Warnet Myers, was presented by Caldwell, the defendant, to Remington, the plaintiff, to change. He heard Caldwell say, that he would be responsible for the bill, upon Remington's refusing to change it, and that he might take the amount of his bill out of it. Remington, in the presence of the witness, paid $75, and gave him a check for the balance, after deducting his bill. Caldwell afterwards stopped at Remington's, and told him if he would present the check on a certain day, he would be paid. He afterwards heard Remingtom say to Caldwell, "you ought to pay the check," to which Caldwell answered, "no, you had the check on your own responsibility, and I think you ought to lose it." This was the testimony in chief, in relation to the check, which was produced and shown to the witness. On the cross-examination, the testimony on the question of identity, was undoubtedly weakened, but was not so entirely overthrown as to make it the duty of the court to withdraw it from the consideration of the jury. There may have been, it is true, another check of a different

(Caldwell *v.* Remington.)

date, for the same amount, drawn by Myers, in favour of Caldwell; and if this had been shown, it would have altered materially the aspect of the case.    The witness mistook the date of the note, but this was a circumstance merely, for there is no subject of inquiry in which persons are so apt to be mistaken.    It was immaterial that the witness had never seen either Caldwell or Myers write, if there was other proof of identity; and it was by no means *conclusive* against its identity, (after what was proved in the examination in chief,) that the witness was unwilling to swear that he did not know this to be the same check, except that he never presented but one check of W. Myers at bank for $150.    It may be proper to add, that there was no proof of any other pecuniary transaction of the same kind between the parties, and the probability is, that nothing of the kind ever took place between them.    In such a case, it is not requisite that conclusive or even very strong proof should be given. Slight proof may, under the circumstances, be all that a court and jury may require of the fact of identity.    The evidence is referred to the jury to decide, and the party has this security, and in most cases it is an ample protection, that any mistake of their's may be corrected on motion for a new trial.    This course was pursued by the court, and the jury have decided not only that there was some evidence, but that it was sufficient to convince them, that the check was the same, for the recovery of which, suit was brought.

Judgment affirmed.