POTTASH BROTHERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAX POTTASH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY POTTASH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11990–11992.   Promulgated May 29, 1928.

*George E. H. Goodner*, Esq., and *S. Henry Rosenthal*, C. P. A., for the petitioners.

*A. H. Murray*, Esq., and *Stanley B. Pierson*, Esq., for the respondent.

OPINION.

SMITH: The issues involved in these proceedings, stated at length in the preliminary statement, may be briefly stated as follows:

(1) What was the correct net worth of the partnership at January 1, 1917?

(2) What was the correct net income of the partnership for 1917?

(3) Whether the tax returns filed for the partnership and of the individual partners for 1917 were false and fraudulent.

(4) Whether the deficiency determined for the partnership is barred from assessment and collection by the statute of limitations.

(5) Whether the distributive share of each partner should be reduced by one-half of the profits tax payable by the partnership.

The books of account of the partnership prior to 1917 were kept mainly on a single entry basis and, as the certified public accountant testified, were "in a deplorable condition." When he was called in by the partnership at the close of 1916 for the purpose of auditing the books of account, the accountant made no closing of the books but opened a new set of books on a double entry basis to begin January 1, 1917. A new ledger was opened and balances from the old ledger were transferred to the new ledger. He determined the net worth of the partnership at January 1, 1917, to be $196,126.50. From that date the books of account, as above indicated, were kept on a double entry basis but apparently numerous errors were made by the bookkeeper during the year 1917. The same accountant, employed to audit the books for 1917, found so many errors that he did not make a complete audit and closing of the books but attempted to start afresh from January 1, 1918. Accordingly, a new ledger was opened as of January 1, 1918, and balances brought forward from the previous ledger. The accountant determined the gain of the partnership for 1917 by deducting from the net worth at December 31, 1917, the net worth at January 1, 1917. The profit thus determined was $14,586.81.

The Commissioner, in attempting to verify the correctness of the return made for the partnership for 1917, rejected the basis used by the certified public accountant and attempted to compute the net income from the books. The record of this action discloses that the

Commissioner made errors in determining the net income. He treated as income of 1917 a sale of merchandise made in 1916 for a price of $12,600 and clearly overstated the net income of the partnership for 1917 by that amount. Likewise, he determined the cash balance at January 1, 1917, as the difference between the debits on the cash book for the month of December and the credits on the cash book for the same month. He determined that the cash on hand at the close of 1916 was $4,215.36, whereas the proof is clear that the amount determined by the accountant, namely, $13,013.49, is the correct amount.

From a consideration of the entire record we are of the opinion that the net income of the partnership for 1917 can best be determined upon the basis of the net worth at the beginning and close of the year, making, however, certain adjustments as will be stated in some detail hereinafter.

First, considering the net worth at January 1, 1917, the evidence shows that the partnership included as accounts receivable at January 1, 1917, an overdraft of Harry Pottash in the amount of $1,504.28 and a loan or donation to a relative, A. Pottash, in the amount of $534.41. The evidence does not show that these amounts were true accounts receivable. Harry Pottash had withdrawn from the business $1,504.28 more than his brother; but the evidence does not disclose that he was under any obligation to return this amount to the partnership. The overdraft was charged up to him as salary in 1917. The charge against A. Pottash appears to have been for an advance made to a relative. The bookkeeper gave the information that this was a donation made to such relative and that there was no intention that it ever would be paid back. Apparently there was a further advance to this same relative in 1917 and the account at December 31, 1917, showed an advance to him of $694.15. This was not recognized as a true account receivable at the close of 1917 and the partnership's accountant in opening the new ledger for 1918 omitted it therefrom. Upon this evidence we are of the opinion that the partnership overstated its net worth at the beginning of the year 1917 by the amounts claimed to be due the partnership from Harry Pottash and A. Pottash. We are also of the opinion that the investment of the partnership in shares of building and loan associations in the amount of $3,326 was not an asset of the partnership. The revenue agent testified that this amount represented payments made to building and loan associations to the wives or relatives of the partners. We therefore think that the investment of the partnership in the shares of building and loan associations was not an asset of the partnership and that the net worth found by the accountant at January 1, 1917, was overstated in the total amount of $5,364.69 and that the true net worth on that date was $190,761.81.

The accountant found that the income of the partnership for 1917 was $14,586.81. This is the amount reported on the partnership return for 1919. The respondent, upon the basis of the revenue agent's report, increased the net income to $78,457.56. The evidence discloses that the revenue agent made errors in reaching such net income. We are not convinced, however, that the net income reached by the accountant is entirely, correct. The record shows that the partnership received large quantities of burlap from several large corporations and also from many junk dealers and peddlers. The burlap was delivered to the partnership's plant in large bundles. An estimate of the value was at once made and the shippers or the peddlers were given a cash advance in respect of the burlap. Max Pottash testified that the conditions in 1916 and 1917 were similar. The advances made were debited to the shippers or peddlers in the accounts payable ledger. The accountant's curiosity was not roused by this fact until he made his audit at the close of 1917. He then asked for an explanation of these debits and was told the true situa· tion regarding them. Since the burlap had actually been received and had gone into the manufactured product and been sold, or was included in the inventory at the close of the year, the accountant decided to place the books on a correct basis at the close of 1917 and, accordingly, debited merchandise and credited accounts payable on the accounts payable ledger to the extent of the unbalanced debits which he found existing on the ledger at December 31, 1917. The entries which he made had the effect of increasing the cost of merchandise consumed in 1917 to the extent of $39,495.20. The respond· ent has allowed $5,171.98 as ·additional cost of merchandise for 1917, but has disallowed the balance, amounting to $34,323.22.

There can be no question but that the action of the accountant employed by the partnership was correct for the purpose of determining the true net worth of the partnership at December 31, 1917. He corrected, however, a practice which had been in existence apparently throughout 1916 and 1917. The same conditions existed in 1916 as in 1917. He did not correct the books at January 1, 1917. To the extent that there may have been unbalanced debits in the accounts payable ledger at January 1, 1917, an overstatement of the net worth of the partnership at the beginning of the year 1917 would have resulted; for the merchandise that had been received up to January 1, 1917, was either reflected in sales of merchandise in 1916 or in inventory at the close of the year. We can not determine the extent of any error that may have been made at the beginning of 1917. It is evident, however, that the net worth at the close of 1917 was determined on an entirely different basis from that at the beginning of the year and we can not accept the accountant's statement as reflecting the true net worth at the beginning of the year.

The respondent has determined that the net income of the partnership for 1917 was understated to the extent of $34,323.22 due to the correction made in the partnership books of account at the close of 1917. In the absence of proof of error the respondent's finding is sustained.

When the accountant opened a new ledger as of January 1, 1918, he failed to bring forward certain balances from the old ledger. These balances are claimed by the partnership to have constituted bad debts deductible from gross income. From an examination of the accounts thus claimed to represent bad debts it is found that one of them represents an investment in a building and loan association. No evidence as to the worthlessness of this account has been furnished the Board. The claim against A. Pottash has been referred to above. The bookkeeper gave information to the effect that it represented a donation made to a relative. The character of the J. Gordon Lodge account is not in evidence. Information was furnished the Commissioner by the bookkeeper that it represented lodge dues paid for members of the partnership. Upon the evidence of record the deduction for bad debts must be disallowed since there is no proof of an ascertainment of worthlessness of them during the year 1917.

From the foregoing we believe that the taxable net income of the partnership for 1917 was as follows:

| | |
|---|---|
| Net income shown by return | $14, 586. 81 |
| Adjustment made by accountant | 34, 323. 22 |
| Amount deducted as bad debts | 2, 060. 43 |
| Total | 50, 970. 46 |

The respondent has determined that the returns filed for the partnership and for the individual partners were false and fraudulent. We are convinced from a consideration of all of the evidence that they were not false or fraudulent with intent to evade the tax. The partners employed a reputable accountant to audit their books of account for 1917 and to prepare their income-tax returns. The records were in bad shape and he did the best that he could with the records available. Apparently the changes that he made in the books of account at the close of 1917 for the purpose of correcting the books were not done with any thought of evading the tax of the partnership or of the partners. We can not determine what effect the change made by the accountant in the closing entries for 1917 had upon the correct net income of 1917. Our conclusion is that any penalty for filing fraudulent returns was not incurred.

The partnership return for 1917 was filed on March 27, 1918. The statutory five-year period in which to assess any tax on this return expired March 27, 1923, except as it may have been extended by a consent or consents filed for a later determination of the tax. It was

admitted at the hearing that a chain of such consents had been filed. The partnership was dissolved in September, 1924. A consent was filed on December 3, 1924, as set forth in the findings of fact. This consent was filed on behalf of the partnership by Max Pottash, one of the partners. Counsel for the petitioners contend that Max Pottash had no authority to sign a consent which would bind his brother. In support of this contention reliance is had upon decisions of the courts of Pennsylvania. In *Schoneman* v. *Fegley*, 7 Pa. St. 433, the court said:

> Now it is settled that, after dissolution, the late partners are not agents for each other, except to make good outstanding engagements, or for the purpose of liquidating the affairs of the partnership. They cannot enter into a new contract or engagement for their former associates, nor bind them by a new promise: *Estate of Davis Desaugue*, 5 Whart. 530; *Levy* v. *Cadet*, 17 Serg. & Rawle, 126. And if one acknowledges an account, it will not affect the other; 3 Johns, 536.

Again, in *Kaufman* v. *Fisher*, 3 Grant. 302, the court said:

> That a promise, however expressed, made by one member of a dissolved partnership to pay a partnership debt already barred by the statute, does not revive the debt as to his copartner, is settled law in Pennsylvania. The ground is, that the power to create a new right against the partnership does not exist in any partner after the dissolution of it; and the acknowledgment of a debt already barred by the statute of limitations is not the mere continuation of the original promise, but a new contract springing out of, and supported by, the original consideration.

There is no evidence, however, that Harry Pottash was not consulted by his brother in connection with the filing of the consent or that he in any wise withheld consent. This consent was filed in connection with the winding up and liquidation of the affairs of the partnership and we are of the opinion that it bound Max Pottash and that he may be held liable for the assessment and collection of deficiencies of tax found to be due from the partnership.

The final assignment of error which it is necessary for us to consider is that in the computation of the deficiencies in income tax owed by the partners the respondent has failed to give effect to the decision of the United States Circuit Court of Appeals for the Second Circuit in the case of *Reid* v. *Rafferty*, 15 Fed. (2d) 264, which decision has been published with approval by the Treasury Department as Treasury Decision 3971. In accordance with that decision the distributive share of the net income of a partnership assignable to each partner is to be credited with the proportionate part of the excess-profits tax of the partnership apportioned to such partner. Max Pottash and Harry Pottash are entitled to have deficiencies in tax for 1917 computed in accordance with the decision of the court in *Reid* v. *Rafferty*, *supra*.

*Judgment will be entered under Rule 50.*