## Burk *against* Huber.

In an action of covenant on an agreement for the sale and purchase of land, to compel the payment of the purchase money, the plaintiff alleged in his declaration a tender of performance on his part; the defendant pleaded specially that the plaintiff had not, and could not, tender an unincumbered title to the land, and set out certain unsatisfied judgments against the plaintiff which were liens upon it; the plaintiff in his replication alleged matters in excuse for the want of a tender to perform on his part. Held, that this variance between the declaration and replication was fatal, on demurrer to the plaintiff's action.

It is not error to refuse to permit a plaintiff to amend his declaration after a judgment in demurrer against him; such amendment is not embraced within the provisions of the act of 1806.

ERROR to the district court of *Lancaster county.*

Peter Burk against John Huber's administrator.

The plaintiff in this case brought an action of covenant against the defendant for the breach of contract contained in certain articles of agreement between them, made the 26th of February 1817, by which, in consideration of the sum of 5500 dollars, he sold, and was to give the defendant, his heirs, &c. a good title, on the 1st day of April next ensuing, with peaceable possession, for ten acres of land in the town of Millersburg, whereon are a tavern and other buildings, &c.; and the defendant was to pay him therefor 3500 dollars on that day, and 2000 dollars in one year thereafter; and the parties bound themselves to perform and fulfil all the covenants in the said articles in the penal sum of 11,000 dollars.

The declaration, averring that the said Peter Burk hath always, on his part, kept and performed his agreement aforesaid, proceeds to assign the breach in the following manner: "yet *protesting* that the said John Huber hath not performed, fulfilled or kept any thing in the said articles of agreement contained, on his part and behalf to be performed, fulfilled and kept according to the tenor and effect, true intent and meaning thereof, the said Peter Burk saith that the sum of 3500 dollars, and the sum of 2000 dollars, were not paid (and are not yet paid to him), at the respective times mentioned in said articles of agreement by the said John Huber, according to the tenor and effect of the said agreement on his part, although he, the said Peter, did, on the 1st day of April then next ensuing the date of said articles, tender unto the said John Huber a good title for the possession of the said ten acres of land and tavern house, with the stove in the bar-room, and premises thereunto belonging.

"And the said Peter Burk in fact saith, that he, the said John Huber (although often requested so to do) hath not kept his said covenant so by him made as aforesaid; but hath broken the same,

[Burk v. Huber.]

and to keep the same with the said Peter Burk hath hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the said Peter Burk 11,000 dollars, and therefore he brings suit, &c."

To this declaration the defendant, on the 17th of June 1825, pleaded payment with leave, &c., and performance with leave, &c., and the plaintiff replied *non solvit*, and that the defendant has not performed his covenant.

On the 14th June 1830, the defendant also filed, by leave of the court, the following additional plea : " and the said John Huber comes and defends the wrong and injury when, &c., and says that the said Peter Burk ought not to have and maintain his aforesaid action thereof against him, because he says that the Pennsylvania Bank, indorsee of Abraham Hershey, payee of Peter Burk, on the 12th of September 1816, at the county aforesaid, recovered judgment in the court of common pleas for the said county of Lancaster, by the award of arbitrators, under the provisions of the act regulating arbitrations, passed the 20th of March 1810, against the said Peter Burk, for a certain debt of 463 dollars 35 cents, as also 18 dollars 79 cents for the costs of the said Pennsylvania Bank, in the said suit whereof the said Peter Burk was convicted, as by the record and proceedings thereof now remaining in the said court, of August term 1816, No. 607, more fully appears. And the said John Huber further avers, that a certain Christian Kauffman, for the use of Henry Carpenter, in the said court of common pleas, by the consideration and judgment of the said court, on the 24th of April 1815, at the county aforesaid, recovered as well a certain debt of 100 dollars, with lawful interest thereon from the 1st day of March 1813, amounting to the sum of 112 dollars 90 cents, as also 7 dollars 96 cents for the costs of the said Christian Kauffman, for the use of the said Henry Carpenter, in the said suit whereof the said Peter Burk was convicted, as by the records and proceedings thereof now remaining in the said court of common pleas, of January term 1815, No. 173, more fully appears. And the said John Huber further avers, that the United States of America, in the said court of common pleas, by the consideration and judgment of the said court, on the 25th of November 1816, at the county aforesaid, recovered as well a certain debt of 150 dollars, as also the sum of 11 dollars 45 cents for the costs of the United States in the said suit against Michael Flinn, the said Peter Burk and Jacob Blitz, whereof the said Michael Flinn, Peter Burk and Jacob Blitz were convicted, as by the record and proceedings thereof now remaining in the said court, of November term 1816, No. 329, more fully appears. And the said John Huber further avers, that the said three judgments were liens against the real estate and premises in the plaintiff's declaration mentioned, from the entry and recovery of the same, and continued to be liens against the premises until long after the alleged tender of the deed by the said Peter Burk to the said John Huber, in the plaintiff's declara-

[Burk v. Huber.]

tion mentioned to have been made on the 1st of April 1817; and the said judgments, until long after the said tender, remained open and unsatisfied. And this the defendant is ready to verify. Whereupon he prays judgment, if the said Peter Burk ought to have or maintain his aforesaid action against him."

On the 16th June 1830, the plaintiff replied specially to this plea, and his replication was demurred to by the defendant, whose demurrer was filed on the 8th of July following. On the 9th July the plaintiff joined in demurrer.

The argument upon this demurrer was commenced on the 14th of December 1831, and the discussion went on until the next day, when the plaintiff's counsel moved the court for leave to amend the special replication, by substituting, in lieu of the same, the following:

" And the said Peter Burk, as to the said plea of the defendant thirdly above pleaded, and by him drawn up at large, of pretended existing judgments and liens, says that he, the said Peter, by reason of any thing by the said John Huber in that plea alleged, ought not to be barred from having and maintaining *his said action* thereof against him, the said John Huber, for his damages, &c. (after protesting that the whole matters set forth in the said plea are one and the same with the matters contained in the plea of payment, with leave to give the special matters in evidence in the cause), because the said John, on the 25th day of March 1817, called on the scrivener, mutually employed by the said Peter and the said John, to prepare the title deed for the conveyance of the said house and lot of ten acres of land, with the appurtenances, by the said Peter to the said John and his heirs, in fee simple, clear and free, and discharged from all liens and incumbrances, and discharged the said scrivener from proceeding to prepare the said deed of conveyance to him, as he, the said John, would not accept the same, nor take the said lot of ground with its appurtenances, so as aforesaid purchased by him of the said Peter Burk, and then and there made no objection to the title of the said Peter Burk of any kind, as to incumbrances, or lien by judgment, or otherwise being on and incumbering the said premises; from which declaration and conduct, the said Peter Burk did not cause and procure the satisfaction to be entered on the said judgments for whatever sums of money might be justly due thereon, which he was able and willing to do and perform, and would have done and performed on the 1st of April 1817, if the said John Huber had not refused so as aforesaid to comply with his aforesaid purchase, without assigning any cause for his refusal beyond his intention to violate and withdraw from his said contract, and this the said Peter is ready to verify. Wherefore, &c."

This motion, after argument, was allowed; and the amended replication having been filed, the defendant's counsel demurred as follows:

Demurrer to second replication, filed 15th December 1831. " And the said John Huber saith that the said replication of the said Peter

[Burk v. Huber.]

Burk, last above pleaded, to the third plea of him, the said John Huber, and the matters therein contained, in manner and form, as the same are above pleaded and set forth, are not sufficient, in law, for the said Peter Burk to have or maintain his aforesaid action thereof against him, the said John Huber, and that he, the said John Huber, is not bound by the law of the land to answer the same; and this the said John Huber is ready to verify. Wherefore, for want of sufficient replication in this behalf, he, the said John Huber, prays judgment, &c. And the said John Huber, according to the form of the statute in such case made and provided, states and shows to the court here the following causes of demurrer in law to the said replication, viz.

"1. The said replication varies and departs from the said declaration above pleaded, in averring that 'because the said John, on the 25th day of March 1817, called on the scrivener mutually employed by the said Peter and the said John to prepare the title deed for the conveyance of the said house and lot of ten acres, &c. by the said Peter to the said John and his heirs, in fee simple, clear of all incumbrances, and discharged the said scrivener from proceeding to prepare the said deed, as he, the said John, would not accept of the same, nor take the said lot of ground, with its appurtenances, so as aforesaid purchased by him of the said Peter Burk, and then and there made no objection to the title of the said Peter Burk, of any kind, as to incumbrances, or lien by judgment or otherwise, being on and incumbering the said premises; from which declaration and conduct the said Peter Burk did not cause and procure satisfaction to be entered on the said judgments for whatever sum of money might be further due thereon; which he was able and willing to do, and would have done on the 1st of April 1817, if the said John Huber had not refused, so as aforesaid, to comply with his aforesaid purchase, without assigning any cause for his refusal, beyond his intention to violate and withdraw from his said contract.'

"2. That the *protestando* embraced in the parenthesis in the said replication of the said Peter is a departure and a variance from the declaration above pleaded by the said Peter.

"3. That the said replication of the said Peter is not certain, direct and positive.

"4. That the said replication pleaded last aforesaid by the said Peter is neither in substance or form any answer, in law, to the special plea, so as above pleaded by the said John, wherein the said John asserts and affirms that on the 1st of April 1817, certain judgments were of record and liens upon the said land.

"5. That the said replication of the said Peter is double and uncertain, and in other respects informal and insufficient."

The plaintiff joined in the demurrer, and upon argument the court (Hayes, president) gave judgment for the defendant, on the 6th of February 1832, when they read their opinion.

After this opinion was read, and judgment rendered accordingly,

the plaintiff asked permission to amend his declaration so as to cure the defects which were the grounds of the judgment on the demurrer against him.

The motion was argued, and the court refused permission to amend.

The judgment upon the demurrer, and the refusal of the court to permit the amendment to be made, were the assignments of error.

*Frazier* and *Hopkins*, for plaintiff in error, cited Van Ness *v.* Hamilton, 20 *Johns. Rep.* 124 ; 2 *Caines's Rep.* 370 ; 1 *Day's Rep.* 206 ; 1 *Root* 551 ; 9 *Pick. Rep.* 287 ; 1 *Hall* 165 ; 1 *Wash. Rep.* 313 ; 2 *Caines's Cas.* 233 ; Cassel *v.* Cook, 8 *Serg. & Rawle* 286 ; 3 *Penns. Black.* 364 ; Hallett *v.* Holmes, 18 *Johns. Rep.* 28.

*Rogers* and *Norris*, for defendant in error, cited, *Steph. on Pl.* 100, 128, 134 : 2 *Archb.* 231 ; Proper *v.* Luce, 3 *Penns. Rep. 65* ; Farmer's Bank *v.* Israel, 6 *Serg. & Rawle* 293 ; Wilson *v.* Hamilton, 4 *Serg. & Rawle* 238 ; Swigart *v.* Lowmarter, 14 *Serg. & Rawle* 200 ; Ebersoll *v.* Krug, 5 *Binn.* 52 ; Wenberg *v.* Horner, 6 *Binn.* 307.

The opinion of the Court was delivered by

GIBSON, C. J.—The point presented by the demurrer is an easy one. In the declaration, the plaintiff founds his title to recover on actual performance of his own covenant as a condition precedent, and in the replication he founds it on matter to excuse performance ; so that a finer example of departure in pleading could not be given. The vice is in the count which sets forth the case untruly ; and in that predicament, no movement in a subsequent stage of the pleadings, but an amendment of the count itself, can retrieve the original fault. In availing himself of leave to amend, the plaintiff should have turned his attention there, and not to the replication. As to the supposed necessity for relaxing the rules of pleading in order to give the wider admission to principles of equity, if indeed an action of covenant to recover damages for a disaffirmance of the contract can admit of equitable principles, it was declared in Jordan *v.* Cooper, 3 *Serg. & Rawle* 578, that the plaintiff must specially aver the fact on which he relies to excuse the want of performance on his own part, in order to entitle him to a specific execution of the contract. And at law, where such performance is equally a condition precedent to the recovery of damages, he must in like manner aver it, or, where such is the fact, allege that he was prevented or discharged from actual performance by him for whose benefit the covenant or condition was to have been performed. 1 *Chitty's Pl.* 317, 318. But the defect was evidently amendable in the abstract ; and the difficulty was in the circumstances of time and repetition.

I know of no case of amendment at common law after final judgment on demurrer ; but I know of no inflexible rule which forbids it to be allowed at any time during the term. A court cannot be too

[Burk v. Huber.]

liberal of its indulgence before the trial, or too strict in its construction
of our statute, which authorises amendments after the jury are sworn.
No one appreciates more highly than I do that extreme accuracy in
pleading which nothing but a compulsory observance of precedents
and forms of practice can produce ; but I am unable to conceive why
a party should be concluded by a variance, when the declaration or
plea may be made to conform to the truth of the case without delay
or injury to any one.    Instead of encouraging laxity and negligence,
amendments conduce essentially to certainty and precision ; especi-
ally with us who, for want of a class of the profession to attend to
the pleadings, are untrained to accuracy in the first instance.    An
adherence to the narrow notions of antiquity on this subject, would
be not only inconsistent with the spirit of modern practice, but pecu-
liarly productive of injustice here.    Unless for strong reasons to the
contrary, I would say that an amendment on demurrer ought to be
allowed, as long as the record remains in the breast of the court ; for
to say that the proceedings cease to be *in fieri* when judgment is
signed, is to offer an objection more artificial than solid, and one
which the court is competent to obviate in an instant, by ordering
the judgment to be struck out.    That would, I admit, be a step in
advance of any that has yet been taken ; but instances are not want-
ing of leave to amend after the delivery of the court's opinion in
favour of the demurrant, which with us is substantially the same
thing.    To recall the parties, might be viewed as going too far in
England, where making up the roll and signing judgment are solemn
matters ; but here they may be restored to their former position in
court by a stroke of the pen.    In Ordroneaux *v.* Prady, 6 *Serg. &*
*Rawle* 511, we have an instance of amendment after judgment,
though not on demurrer ; and in Spackman *v.* Byers, 6 *Serg. &*
*Rawle* 385, we have another even after error brought, which, we may
infer from Bailey *v.* Musgrave, 2 *Serg. & Rawle* 220, would not have
been sustained by the appellate court, had the amendment been sup-
posed to involve an excess of authority.    There is certainly nothing
peculiar in a judgment on demurrer ; nor do I see any reason for a
difference, whether the amendment is to sustain or to overthrow the
judgment, provided it be indispensable to justice.    Yet I would not
press the doctrine beyond the bounds of mutual convenience.    Where
the opposite party would receive a prejudice not admitting of compen-
sation, and more especially when the party to be indulged has had
an amendment already, further interference might with propriety be
refused.    But granting for the sake of the argument that the amend-
ment ought to have been allowed, has the plaintiff a remedy here ?

In Renninger *v.* Thompson, 6 *Serg. & Rawle* 2, it was said that
matter of pure discretion is not the subject of a writ of error ; and if
an example were necessary to the authority of the principle, it would
be suggested by the discretionary power to grant new trials, which,
as to the propriety of its exercise in the particular instance, was at-
tempted to be drawn into question in this court in Burd *v.* Dansdale,

[Burk v. Huber.]

2 *Binn.* 80 ; or to relieve bail in a summary way, which came up in Roop *v.* Meck, 6 *Serg. & Rawle* 542, where it was decided that error does not lie on an order to stay proceedings on the bail bond. In like manner it was said, in The King *v.* The Mayor and Burgesses of Grampond, 7 *T. R.* 699, that amendments by the inherent power of the court are reducible to no certain rule, each particular case being left on its circumstances to the mere discretion of the judges ; and this sound principle has been sanctioned by this court in Benner *v.* Fry, 1 *Binn.* 369 ; Ordroneaux *v.* Prady, 6 *Serg. & Rawle* 510 ; Bailey *v.* Musgrave, 2 *Serg. & Rawle* 220 ; Clymer *v.* Thomas, 7 *Serg. & Rawle* 180 ; and Proper *v.* Luce, 2 *Penns. Rep.* 65. It was recognised also in Woods *v.* Young, 4 *Cranch* 237, and the Marine Insurance Company *v.* Hodgson, 6 *Cranch* 217. But, on the other hand, it has been repeatedly adjudged, that the amendments prescribed by our act of 1806, are mandatory and not discretionary ; and they have been recognised as subjects of error in Young *v.* The Commonwealth, 6 *Binn.* 88 ; Glazer *v.* Lowrie, 8 *Serg. & Rawle* 498 ; Maus *v.* Montgomery, 10 *Serg. & Rawle* 192 ; Newlin *v.* Palmer, 11 *Serg. & Rawle* 110 ; as well as Clymer *v.* Thomas, and Proper *v.* Luce, already cited. Now the amendment sought to be established here, not being within the statutes of jeofails, which respect but defects of form, must depend on the. common law powers of the court, and so be a subject of mere discretion, or else be demandable of right by force of the act of 1806, in which aspect alone it can be the subject of a writ of error. In the Farmers and Mechanics Bank *v.* Israel, 6 *Serg. & Rawle* 293, it was said, the object of that act is to empower or require the courts to grant amendments after the jury are sworn, as amply as they would do before it ; and to enable a judge at *nisi prius* to allow amendments which formerly could have been allowed but *in bank.* If such truly be the object, its corrective provisions are adapted exclusively to defects in an issue tried by a jury. By the sixth section, which is the material one, it is enacted that a suit "shall not be set aside for *informality,* if it appear that the process has issued in the name of the commonwealth, against the defendant, for moneys owing or due, or for damages by trespass or otherwise, as the case may be ; and that the said process was served by the proper officer, and in due time." Thus far it will not be pretended that the section is applicable to the suit before us, which was not set aside for an informality, but for a substantial defect in the title set out ; and thus far too, it must be conceded, that the idea of an amendment to cure even an informality is not suggested, much less to add an operative ingredient to the case appearing on the pleadings which the demurrant never intended to confess. The clauses quoted expressly relate to informalities which are not to be amended but disregarded ; but the case before us contains a defect which, without amendment, must be fatal to it. "Nor shall any plaintiff be *nonsuit,*" the section proceeds, "for informality in any statement or declaration filed, or by reason of any informality in entering a

[Burk v. Huber.]

plea; but when, in the opinion of the court, such informality will affect the merits, the plaintiff shall be permitted to amend his declaration or statement, and the defendant may alter his plea or defence, on or before the *trial* of such cause; and if, by such alteration or amendment the adverse party is taken by surprise, the trial shall be postponed to the next court." Now not to insist on the popular sense of the word " trial," it is plain that these last mentioned provisions point directly to a decision of the merits by a jury: for no plaintiff becomes nonsuit for a variance or informality in the trial of an issue of law, or in the trial of an issue of fact, for having, as in the present case, set out no cause of action. Indeed, the whole seems to be intended for emergencies arising in a trial by a jury; and if for any thing beside, it was to prevent a judgment from being reversed for defects in form which should need no amendment—such, for instance, as would be fatal to a judgment by default. Yet even if the general provision were applicable to a demurrer, it could not be intended for a demurrer after judgment or any other case that would require the court to unravel a part of what had been done. In Franklin *v.* Mackey, 16 *Serg. & Rawle* 117, it seems to have been taken for granted that the entire section was intended for a trial by jury, and that the legislature had no more in view. It is probable that the penman of the act had nothing distinctly in his view. He was evidently not of the profession, else he would not have thought it necessary to provide that a plaintiff shall not be nonsuit for an informality in the entering of a plea. He probably intended that every cause should be tried on the merits without regard to the pleadings; and we might possibly bring our case within the spirit if not within the letter of such an enactment. But though intended to be remedial, it is not, I have said, to be construed with unrestrained liberality. In practice it is as often employed to baffle, as it is used to attain, the ends of justice; and as it was held in the case last quoted (where the judgment was reversed because the plaintiff had not been indulged with a *third* amendment), that it was the design of the act to allow amendments *toties quoties* and without stint, we ought to be cautious how we enlarge its bounds by construction. We are of opinion that the demurrer was properly ruled; but as the amendment does not fall within the act of 1806, we do not undertake to pronounce judicially on the propriety of its disallowance.

Judgment affirmed.