## Ormsby *et al. versus* Ihmsen.

From the lapse of twenty-one years after the return of a survey into the land office, there arises a conclusive presumption of law, that it was regularly made upon the ground, as returned.

This is a presumption *juris et de jure;* and is not to be rebutted by mere negative evidence, that no marks are found upon the ground, where marks might have been expected.

The fact that the name of an older survey is written on the draft returned with a younger one, does not carry the lines of the younger survey to those of the older one, if the latter be not called for, as an adjoiner, in the return.

The patent being founded on the survey and warrant of acceptance, only conveys title to the land actually embraced in the survey.   If the patent erroneously call for an older survey as an adjoiner, the survey and not the patent will govern, as to the land embraced in the title.

Where there was a partition at the suit of the grantee of one of the heirs of a decedent, between himself and the remaining heirs, and in his petition a particular piece of land was excluded from the premises described, and of which partition was claimed; and the other heirs, subsequently, made partition of the land allotted to them in the first partition, and also of the land excluded from it (to which they had another title), and the shares of some of them were allotted in the piece of land excluded from the first partition, and others of them improved and aliened their purparts; these proceedings are evidence against the party at whose suit the first partition was had, in an ejectment for a share of the land excluded from it; for, if the other heirs, on the faith of his admission that the land was so excluded from the title under which the first partition was had, placed themselves in a position from which they could not retire without loss, he ought not to be permitted to show that his admission was a mistake.   It would amount to an estoppel *in pais.*

The subsequent proceedings in partition were not, as to such party, *res inter alios actæ;* for they were the consequences of his own act.   And if one of two innocent parties must suffer, he must bear the loss, whose mistake has caused it.

If both parties were ignorant of the true boundary of the lands of which partition was made, the adoption of a particular line in the plaintiff's petition would partake of the nature of a compromise of a doubtful right, and if acted upon by the other parties, might constitute an estoppel *in pais.*

The court will not reverse for an error, by which the party complaining of it, could not have been injured.

The opinions of surveyors, though sometimes admissible in regard to facts, are not so, as to the construction to be given to a survey, as returned.

A judgment upon a writ of error sued out by one of the parties, is no bar to a subsequent writ of error at the suit of the other party, on which different errors are assigned.

[Ormsby et al. v. Ihmsen.]

ERROR to the District Court of *Allegheny county.*

This was an ejectment by Christian Ihmsen against Oliver H. Ormsby, and others, heirs and legal representatives of Oliver Ormsby, deceased, for the undivided third part of a tract of land in Lower St. Clair township, containing about 25 acres, known as the Bradford tract.

On the trial in the court below, there was a verdict for the plaintiff, subject to the opinion of the court on points reserved; the court below subsequently gave judgment for the defendants on the reserved points, which, on a former writ of error sued out by the plaintiff, was reversed by this court, and judgment was entered for the plaintiff on the verdict. See 8 *Casey* 198. The defendants then sued out this writ.

The plaintiff claimed that the land in dispute was part of a large tract, called "Bergen op Zoom;" to one undivided third part of which he showed title.

On the trial, he produced a certified copy from the land office of the draft of a survey to John Ormsby, Sr., for a tract of land, called "Bergen op Zoom," dated the 6th June 1786, which was returned on the 5th July 1786; a warrant of acceptance of the 4th April 1788, and a patent of the 11th April 1788. The description in the patent was as follows:—

"Beginning at a hickory and white oak, thence, by land of Oliver Ormsby, N. 8¾° E. 360 perches, to a post and sugar; thence, by other land of John Ormsby, S. 76° E. 148¼ perches, to a black oak; thence, S. 202 perches, by land of Charles Smith, to a black oak; thence, S. 34° E. 64½ perches, to a sugar and linn; thence, by land of James McGoldrich, up Beck's Run, S. 57° W. 114 perches, S. 87° W. 66 perches, and S. 45° W. 38 perches; and thence by land of Robert Wilson, N. 59° W. 54 perches, to beginning; containing 370 acres and 154 perches."

The survey, as returned, did not call for the John Ormsby tract as an adjoiner; but the name of "John Ormsby" was written thereon, at a short distance from the northern line of the "Bergen op Zoom" tract. The "John Ormsby" was an older survey; and the question was, whether the "Bergen op Zoom" extended to and adjoined the "John Ormsby."

John Ormsby, Sr., left two children: Oliver, the ancestor of the defendants; Sidney, intermarried with Isaac Gregg; and a grandchild, Mary Swazey, who was the issue of John, a son of John Ormsby, Sr., who died before his father. The plaintiff showed title under Mary Swazey.

The defendants claimed title under Charles S. Bradford, by virtue of two patents, dated the 8th February 1837, and 9th November 1838. Bradford conveyed the premises to them on the 30th December 1837.

[Ormsby *et al. v.* Ihmsen.]

The following diagram will show the lines claimed by the respective parties.

In 1855, on the petition of Christian Ihmsen, the plaintiff, to the Orphans' Court of Allegheny county, there was a partition of the Bergen op Zoom tract, between the plaintiff, the defendants, and the heirs of Sidney Gregg. The description of the Bergen op Zoom tract given in the plaintiff's partition, did not embrace the land in dispute.

In 1857, after the commencement of this ejectment, there was a partition between the defendants, as well of the purpart allotted to them on the first partition, as of the land claimed under the Bradford patents. In that proceeding, the whole of the share of Oliver Ormsby was allotted to him out of the Bradford tract. Other portions of this tract were allotted to some of the other defendants, and others received the whole of their shares out of the Bergen op Zoom. The defendants took possession of their respective shares; some of them improved and built upon their portions; and one of them, before the service of the present ejectment upon her, had aliened the whole of her share of Bergen op Zoom.

On the trial, the defendants gave in evidence, the record of the first partition; but the court below withdrew the consideration of it from the jury, and reserved the point of law arising thereon; and their determination on this reserved point was the matter complained of, on the plaintiff's former writ of error. See 8 *Casey* 198.

The defendants also offered in evidence the record of the second

[Ormsby *et al. v.* Ihmsen.]

partition, and the subsequent proceedings, for the purpose of showing that the plaintiff was estopped from setting up the alleged mistake in the lines of the Bergen op Zoom tract, as divided by the first partition; and that the defendants had acted on the faith of that partition, and could not be placed *in statu quo.* The court below rejected this evidence, and the defendants excepted.

The defendants also offered in evidence, a copy of a draft of the Bergen op Zoom tract, taken from the books of the county surveyor, and purporting to have been made on the 6th June 1786. The court overruled the offer, and the defendants excepted.

The defendants then offered to prove by a surveyor (Hastings), who had run the lines of the Bergen op Zoom, several times, from 1833 to 1835, whether, in his opinion, the land in dispute was, or was not, vacant land at the time he run the lines. The court rejected this evidence, and sealed another bill of exceptions.

The defendant's counsel presented certain points in writing, upon which they requested the court to charge the jury, which, with answers given by the court below, were as follows:—

1. That after the lapse of even less than forty years after the return of a survey into the land office, the law will presume that such survey was regularly made on the ground.

2. That if the jury are satisfied, from the testimony of E. McGowan, that one or more of the lines of the Bergen op Zoom survey, were actually run and marked on the ground, their necessary inference should be, that the whole survey was actually run and marked on the ground.

Answer.—" In answer to the defendants' first and second points, we say, that after the lapse of forty years, or even a shorter period after the return of a survey, made by the proper officer, into the land office, in the absence of any proof on the subject, the law will presume that the survey was regularly made and marked on the ground. This presumption is necessarily resorted to, in order to sustain the validity of our titles, after the usual and ordinary evidences have disappeared, either by the death of the surveyor and other witnesses, who were cognisant of the fact, or by the destruction of the line trees and marked corners, which are the monuments of the survey on the ground. But this is only a presumption of law, based on the necessity of the case, and may be rebutted or destroyed by positive proof. For instance, when a line is alleged to have been run over ground which has never been cleared, when trees are still standing along the course of the line, for a considerable distance, and when careful and skilful surveyors have made diligent search, and can find no marks whatever on the ground; more especially, if such trees are found on the alleged line which are not marked, and which would

[*Ormsby et al. v.* Ihmsen.]

in all probability have been marked, if the line had been actually run on the ground; this evidence would be sufficient to overthrow the presumption of law, that such survey had been actually made on the ground."

4. That though the third line of the patent is stated to run by other land of John Ormsby, the patentee, yet if the jury are satisfied that this call was a mistake, and that the surveyor did not in fact run the second line to John Ormsby's land, they are not bound by the call for said land, but should fix said line, according to its true course and distance, irrespective of said call.

Answer.—"If a survey call for an adjoiner by mistake, and that mistake should be proved to the satisfaction of the jury, by showing the line actually run on the ground to be inconsistent with the call, the call must yield to the survey on the ground, wherever that is shown to have been made. Yet, if an adjoiner be called for, and a line be plotted on the draught, by courses and distances inconsistent with the call, and if no line was actually run on the ground in accordance with such line, then the law presumes such line so plotted on the draft to have been a mistake of the surveyor, and the patentee under such survey will be entitled to go to the adjoiner, although there be an excess of several perches in the length of the line required to reach the adjoiner called for."

6. That in the absence of positive evidence as to when the northern boundary of Bergen op Zoom was run, the sworn petition for partition, by plaintiff, especially after the information given him by McGowan, of his intention not to include the disputed land in the Bergen op Zoom partition, is entitled to great weight with the jury, in determining the location of said line; and in the absence of any satisfactory explanation, or of any satisfactory proof to the contrary, should be conclusive.

10. That if the jury believe that plaintiff was aware of the dispute in regard to the line and land in controversy, previous to the petition to the Orphans' Court for partition, he would now be estopped by those proceedings, from asserting that the land in controversy is a part of Bergen op Zoom tract, or that John Ormsby died seised thereof.

Answer.—"The court reserved the question of estoppel arising out of the proceedings in partition in the Orphans' Court, as a question of law for the determination of the court in banc, and instructed the jury, *pro formâ*, that said record did not estop the plaintiff from recovering in this action."

In answer to questions propounded by the jury, the court instructed them, that "unless they were satisfied, from the evidence, that the land in dispute was excluded from the Bergen op Zoom tract, by the cross lines being actually run on the ground, in 1786, at the time this tract was surveyed, the opinion of Mr.

[Ormsby *et al. v.* Ihmsen.]

McGowan is entitled to no weight whatever. In other words, the question whether this land was vacant or not, depends upon the fact whether this cross line was actually run and marked on the ground or not."

In answer to the second inquiry, the court said, "We have reserved the question of estoppel arising upon the Orphans' Court record. *It being a mere question of law, and not of fact, the jury will not regard the petition, or any portion of the record as before them.*"

To this instruction the defendants excepted; and a verdict having been rendered for the plaintiff, subject to the opinion of the court, upon the point reserved, and this court having, on the former writ of error, directed judgment to be entered for the plaintiff on the reserved point, the defendants sued out this writ, and here assigned for error: 1. The rejection of the evidence mentioned in their bills of exception: 2. The answers of the court below to the points presented on the trial.

*Burgwin,* for the plaintiffs in error, cited Dezell *v.* Odell, 3 *Hill* 219; Eldred *v.* Hazlett's Administrator, 9 *Casey* 307; Sergeant *v.* Ewing, 6 *Id.* 81; Beaupland *v.* McKeen, 4 *Id.* 131; Henry *v.* Henry, 5 *Barr* 247–9; Nieman *v.* Ward, 1 *W. & S.* 68; Lambourn *v.* Hartswich, 13 *S. & R.* 113–21.

*Williams & Sproul,* for the defendant in error, cited Schnable *v.* Doughty, 3 *Barr* 399; Covert *v.* Irwin, 3 *S. & R.* 283; Cox *v.* Crouch, 8 *Barr* 147; Hall *v.* Powel, 4 *S. & R.* 456; Mahon *v.* Duncan, 1 *Harris* 459; Martz *v.* Hartley, 4 *Watts* 261; Walker *v.* Smith, 2 *Barr* 43; Hall *v.* Tanner, 4 *Id.* 247; Mills *v.* Buchanan, 2 *Harris* 59; Gratz *v.* Hoover, 4 *Id.* 238; Hagerty *v.* Matthers, 7 *Casey* 348; Lorain *v.* Hall, 9 *Id.* 270.

The opinion of the court was delivered by

SRRONG, J.—This case was before us last year, upon a writ of error brought by the plaintiff below, to the judgment of the District Court upon a reserved point. We then reversed that judgment, and as there was nothing upon the part of the record submitted to us, to indicate that the plaintiff was not entitled to the benefit of the verdict which he had obtained, we directed judgment to be entered upon it in his favour. The defendants below now bring this writ, and allege that errors were committed against them, apparent in that part of the record, not last year before us. This they have a right to do, for every writ of error is an action, though founded upon another legal proceeding. The judgment upon such a writ, if successful, is, regularly, that the errors assigned have been sustained, and it is only as its consequence, that the judgment of the inferior court is reversed. Of

[*Ormsby et al. v.* Ihmsen.]

course, it is no bar to a writ sued out by the unsuccessful party assigning different errors. If, however, the whole record of the court below had been brought here by the former writ, we should then have ordered a *venire de novo*, instead of directing judgment to be entered upon the verdict.

The defendants below claimed the land in controversy, by virtue of a patent from the Commonwealth to Charles S. Bradford, dated February 8th 1837. The patent was founded on a survey, made January 19th 1837, in pursuance of a warrant issued January 11th of the same year. The plaintiff contended, that the land was not vacant when the warrant for the Bradford survey was granted, but that it was embraced within a patent, dated April 11th 1788, for a tract of land called " Bergen op Zoom." Whether it was so embraced or not, was the main question in the case.

The survey of " Bergen op Zoom" was made June 6th 1786, returned and entered July 5th 1786, and the warrant of acceptance was dated April 4th 1788. A patent was issued, dated April 11th 1788, which describes the land patented as "beginning at a hickory and white oak, thence by land of Oliver Ormsby, N. $8\frac{3}{4}°$ E. 360 perches, to a post and sugar; thence, by other land of John Ormsby, S. 76° E. $148\frac{1}{4}$ perches, to a black oak; thence, S. 202 perches, by land of Charles Smith, to a black oak," &c. The John Ormsby warrant and survey was an older warrant and survey, and whether Bergen op Zoom extended to it was the main point in dispute. It did not, if the courses and distances of Bergen op Zoom survey, as returned by the surveyor into the land office, and as described in the patent, are to govern; it did, if the call in the patent is to prevail. The evidence in the case disclosed, that no marks were to be found upon the ground along the northern line, towards the tract of John Ormsby (the second line described in the patent). Marks of the survey were, however, found upon other lines. That the surveyor had been upon the ground was, therefore, established; but whether he ran the northern line, that returned S. 76° E. $148\frac{1}{4}$ perches, there was no other evidence, than what was furnished by the return of the survey itself. The defendants below requested the court to charge the jury, first, that after the lapse of forty years from the return of the survey into the land office, the law will presume that such survey was regularly made on the ground; and secondly, that if the jury was satisfied that one or more of the lines of the " Bergen op Zoom" survey were actually run and marked upon the ground, their necessary inference should be, that the whole survey was actually run and marked upon the ground. These propositions were preparatory to the inference, that the call in the patent for John Ormsby's line was a mistake, the land granted being only what was actually surveyed on the ground. The court replied, in substance, that "after the lapse of forty years, or

[Ormsby *et al. v.* Ihmsen.]

even a shorter period, the law presumes that a survey returned by the proper officer was regularly so made and marked. But that this was only a presumption of law based on the necessity of the case, and might be rebutted by positive proof. For instance, where a line is alleged to have been run over ground which has never been cleared, where trees are still standing along the course of the line for a considerable distance, and where careful and skilful surveyors have made diligent search, and can find no marks whatever on the ground, more especially, if trees are found on the alleged line not marked, which would in all probability have been marked, if the line had been actually run on the ground, this evidence would be sufficient to overthrow the presumption of law that such survey had been actually made on the ground." The learned judge thus, in effect, instructed the jury that, although such a presumption arose after a long lapse of time, it would be rebutted by mere negative evidence, by the failure to find marks where marks might have been expected.

To this we cannot assent. Such is not the nature or the weakness of the presumption, which attends a survey returned without objection, for more than twenty-one years. It is more than a mere probability; it is *presumptio juris et de jure,* a legal conclusion. The marks which it is the duty of the surveyor to make on the ground cannot be permanent; posts and stones may be removed, either accidentally or by design; trees may be cut down, or decay; the progress of cultivation and improvement tends to obliterate them, and, just in proportion as the land increases in value, do the evidences of title furnished by the surveyor's marks disappear. Where lands have been improved, it would seem more reasonable to expect that no traces of the surveyor's line should be found after twenty-one years, than that any should remain. Titles would be insecure, indeed, if, after such a period, the absence of visible marks were held sufficient to invalidate a returned survey. Time, also, removes living witnesses; the surveyor and his assistants may die, and necessarily, therefore, resort must be had to the return itself, as evidence furnished by the officer of the law of what he has done. It is a legitimate deduction, that he performed his duty, and therefore that he actually made the survey upon the ground, and made it as he returned it; and, in analogy to the statute of limitations, for the certainty of titles, it has been found necessary to hold, that the presumption, that the survey returned was regularly made, is conclusive, even though no marks are to be found on the ground corresponding with the lines of the plot or draft. It is needless to say, that if the presumption be conclusive, there is no question of degree: that it is immaterial, how favourable the ground may be to the perpetuation of marks made at the time of the survey.

In Lambourn *v.* Hartswick, 13 *S. & R.* 121, it was more than

intimated that such is the law. In Mock *v.* Astley, *Id.* 382, DUNCAN, J., said, "Where the return has lain for years in the office undisturbed, without any opposing claim or possession, more particularly where the owner has paid the public taxes, the presumption is a violent one, and so ought always to be left to the jury, of the survey being a regular one, though all the marked lines are not, at a distant day, to be found on the ground; and after twenty-one years, by analogy to all presumptions, I would consider it a presumption of law; and, like livery of seisin, it ought to be presumed." This opinion of Judge DUNCAN was adopted by this court in Caul *v.* Spring, 2 *Watts* 306, and again in Norris *v.* Hamilton, 7 *Watts* 91. It is true, that in these cases payment of taxes and possession are coupled with the lapse of time, but the investiture of the legal title, or a patent, as in the present case, is a full equivalent for them. The doctrine was reiterated in Nieman *v.* Ward, 1 *W. & S.* 68, in which Judge KENNEDY said, "The length of time (sixty-four years) is three times more than sufficient to raise an absolute and conclusive presumption of law, which cannot be rebutted, that the survey was duly and regularly made by the artists having gone on the ground, and having run and measured the lines." Other cases to the same effect might be cited. The District Court was, therefore, in error in its answer to the points proposed by the defendants below; they should have been unqualifiedly affirmed.

It is true, that when a survey is bounded by an older survey, it is not necessary nor proper to mark the line between the two anew; the lines of the old survey may be adopted, and when they are, they become the lines of the younger. But in this case, the survey, as returned, does not call for the lines of the John Ormsby land (Ormsby Villa and Barry Hall), nor adopt them. The certified copy of the official draft of the Bergen op Zoom survey, given in evidence, describes a north line, by a course and distance entirely variant from that of the John Ormsby tract, does not purport to adopt the line of that tract, and makes no reference to it. The mere fact that the name "John Ormsby" is written on the draft, north of the line S. 76° E. 148¼ perches, amounts to no call for his survey. The legal presumption, therefore, was, that the north line of the Bergen op Zoom survey, as returned to the land office, was made upon the ground, and that it was not necessarily the line of the John Ormsby tract. If this presumption needed confirmation, it would be found in the facts, that the closing line must of course be a straight line, and that if the survey was closed by the lines of the John Ormsby tract, there must have been two lines, with a considerable angle between them. That this cannot be, was shown in Henry *v.* Henry, 5 *Barr* 249. In that case the survey, as returned, actually called for another survey at two corners, but in the intervening distance the lines of the adjoining survey retired, forming an angle, and leaving a space between

them and the line of the junior survey, which pursued a straight course: the intermediate land was held not to be covered by the junior survey.

The patent having been founded upon the survey and warrant of acceptance, conveyed the legal title to the land surveyed, and to that only. If the north line of the survey, as returned, is not the line of the John Ormsby tract, and if the survey does not call for and adopt that line, then there was a mistake either in the patent or in the survey. But it was not in the latter, for, as we have seen, after such a lapse of time, it is conclusively presumed to have been made when it is returned as having been made. The mistake, therefore, if any, was in the patent, and not in the survey. This is all that need be said respecting the fourth, seventh, and eighth assignments of error.

We think that the court also erred, in rejecting the evidence offered by the defendants, mentioned in the first bill of exceptions, and in withholding, from the consideration of the jury, the facts connected with the partition of the Bergen op Zoom tract, and the subsequent partition of the Bradford tract. The plaintiff had presented to the Orphans' Court his sworn petition for a partition of "Bergen op Zoom,"· and had therein described it as bounded on the north by the land in dispute. In accordance with his petition, the land was divided between the plaintiff and the defendants. Subsequently, proceedings were instituted at the instance of the defendants, to effect partition of the Bradford tract. On the supposition, that it was not included in "Bergen op Zoom," judgment *quod partitio fiat* was obtained, and a writ of partition was issued, before this ejectment was brought. Under this judgment, portions of the land were afterwards set apart in severalty to the different defendants. The plaintiff's description of the north line of Bergen op Zoom, as contained in his sworn petition, was an assertion inconsistent with his claim in this ejectment, amounting almost, if not quite, to an admission that the Bradford tract was no part of it. Now, although this may not be, in law, a conclusive bar to the action of the plaintiff, and although it may have been either false or mistaken, yet if it induced action by the defendants; if, on the faith of it, they put themselves into a position from which they cannot retire without loss, the plaintiff ought not now to be permitted to show that his admission was a mistake, or not according to the fact.

The proceedings in the partition of the Bradford tract are not to be regarded as "*res inter alios actæ;*" they became a part of one transaction, with which the plaintiff connected himself by his admission. The partition and the subsequent disposition of the property were consequences of his own act, and though that act may have been mistaken, the rule is, that when one of two innocent parties must suffer, he must bear the loss, whose mistake

caused it.    Whether the acts of the defendants, evidence of which the court refused to receive, were in fact induced by the admission of the plaintiff, was a question for the jury.    If they were, they raised a strong equity against the plaintiff's claim.    If they were not, then they were wholly immaterial, and the jury should have attached no importance to them.    If the truth was known to both parties, there was no estoppel (see Hill *v.* Epley, 7 *Casey* 334, and the cases there collected); for it is essential to such an estoppel, that the party who asserts it has been misled, and he cannot be misled by a statement, the falsity of which he knows. The testimony of McGowan, however, shows that none of the parties seem to have known precisely where the north line of Bergen op Zoom was.    It was claimed by the defendants, to be further south than the south line of the Bradford tract, now in dispute.    Under such circumstances the adoption of the south line of that tract, in the plaintiff's petition, partakes somewhat of the nature of the compromise of a doubtful right, and, if acted upon by the defendants, might well constitute the basis of an estoppel *in pais*.

The second bill of exceptions was taken to the rejection of the draft of the survey of Bergen op Zoom tract, taken from the book of the county surveyor, purporting to have been made June 6th 1786.    It was offered, to show the true location of the tract.    But if the return of survey into the land office, with the great lapse of time, raised a conclusive presumption that the survey was made as returned, it is not easy to see how the draft from the county surveyor's office was material.    Nor does there appear to be any substantial difference between it and the draft sent to the land office ; it does not call for the John Ormsby tract on the north, neither does the one returned.    It is true, that there are cases in the books in which it was ruled, that evidence of a similar character is admissible ; they are, however, cases where a survey was recently returned, and there were interfering claims, or where two surveys have been made on the ground interfering with each other, and where the lines had been changed, or where fraud was imputed to a surveyor in returning a survey for one, which was made for another.    To one or another of these classes belong Adams *v.* Goodlander, 2 *Yeates* 313 ; Hoover *v.* Gonzalus, 11 *S. & R.* 314 ; Biddle *v.* Dougall, 2 *Binn.* 37, and many other cases which might be cited.    Some, undoubtedly, go further, and would justify the admission of the evidence offered in this case, to go for what it might be worth, as the judges have sometimes said. Yet, as we do not perceive that the defendants could have been injured by its rejection, we would not reverse the judgment for that cause.

We discover no other errors in the record.    Opinions of surveyors are sometimes admitted, but only in regard to facts—never

[Ormsby *et al. v.* Ihmsen.]

in regard to legal conclusions—never in regard to the construction of a return of a survey.   Here the opinion of the surveyors was asked, as to whether the land included in the Bradford patent was vacant in 1837.   Whether it was or not, depended entirely upon the construction to be given to the survey as returned, in the absence of visible marks on the ground.   The opinions were, therefore, substantially upon the construction of the office-paper, and were not admissible.

The judgment is reversed, and a *venire de novo* awarded.